(Martin *v.* Stillé.)

---

*[PHILADELPHIA, FEBRUARY 17, 1838.]　　　　　　[*337]

## MARTIN *against* STILLÉ.

### IN ERROR.

1. The nominal plaintiff on record, who had assigned his claim before suit brought for the consideration of one dollar, was held to be a competent witness to support the claim, though not released by the assignee.
2. A declaration in an action on the case set forth that the plaintiff was possessed of certain shares of stock which he sold to the defendant for a certain price, which the defendant promised to pay; and that he, the plaintiff, was ready, and offered to transfer the stock to the defendant, who refused to accept and pay, &c. And afterwards the plaintiff filed other counts, setting forth that the defendant, as agent, undertook and promised the plaintiff to sell the said stock for him, &c., yet the defendant, not regarding his duty or promise, negligently, &c., conducted him-

(Martin *v.* Stillé.)

self, so that the plaintiff lost the same, &c.: *Held,* that if there was a misjoinder, the defendant could only take advantage of it by special demurrer, and that it could not be assigned for error.

ERROR to the District Court for the City and County of Philadelphia, to remove the record of an action on the case brought by John Stillé, Jun., to the use of William T. Smith, against Robert C. Martin.

It appeared from the record of this suit, that the following declaration was filed by the plaintiff in the first instance.

" Robert C. Martin, late of the city aforesaid, merchant, was attached to answer John Stillé, Jr., to the use of William T. Smith, of a plea of trespass in the case, &c.    And thereupon the said John, by C. Ingersoll, his attorney, complains, that whereas heretofore, to wit, on the first day of September, in the year of our Lord eighteen hundred and thirty-four, at the city aforesaid, he was possessed of one hundred and ten shares of the stock of the West Philadelphia Canal Company, then standing in his name on the books of the said company, and the said John, being so possessed thereof afterwards, to wit, on the day and year aforesaid, at the city aforesaid, at the special instance and request of the said Robert, did sell to him, the said Robert, the said shares of stock at and for the price or sum of five hundred dollars, and then and there promised the said Robert, that he would transfer the said shares of stock to him, the said Robert, on the books of the said company, upon payment by the said Robert of the said price or sum for the same, when he the said John should be thereto afterwards requested.    And in consideration of the premises the said Robert then and there promised the said John to accept the said shares of stock, and to pay for the same the [*338] price *or sum aforesaid, when he the said Robert should be thereunto afterwards requested.    And the said John avers that afterwards, to wit, on the day and year aforesaid, at the city aforesaid, he was ready and willing, and offered to transfer to the said Robert the said shares of stock, according to the form and effect of the contract aforesaid, upon payment by him the said Robert of the said price or sum for the same, and then and there requested the said Robert to accept the said shares of stock, and to pay him for the same the said price or sum according to the form and effect of the contract aforesaid.    Yet the said Robert, when so requested as aforesaid, to wit, on the day and year aforesaid, at the city aforesaid, would not, nor at any time would, accept the said shares of stock, or pay the said John the said price or sum of five hundred dollars therefor according to the form and effect of the contract aforesaid, but then and at all times wholly omitted and refused to do so, by reason whereof

(Martin v. Stillé.)

the said John was obliged to sell and transfer, and has sold and transferred the said shares of stock for a less price than-for which he had sold the same to the said Robert as aforesaid, namely for the price or sum of forty-eight dollars, being the best price he the said John could obtain for the same, to the damage of the said John six hundred dollars.

And whereas also afterwards, to wit, on the day and year aforesaid, at the city aforesaid, a certain conversation was had and moved by and between the said John and the said Robert wherein the said John, in consideration of the promise and undertaking of the said Robert, then and there made, to pay him for the same the price or sum of five hundred dollars, and to accept a transfer thereof, on the books of the West Philadelphia Canal Company, did agree and undertake to sell to the said Robert certain other one hundred and ten shares of the stock of the said West Philadelphia Canal Company, of which he the said John was then and there possessed, and which was then standing in his name on the books of the said company, and to transfer the said shares of the said stock to the said Robert, on the books of the said company, upon payment by the said Robert of the said price or sum of five hundred .dollars, when he the said John should be thereto afterwards requested. And the said John in fact saith, that afterwards, to wit, on the day and year aforesaid, at the city aforesaid, he was ready and willing to transfer the said shares of stock according to the form and effect of the contract aforesaid, and did then and there offer and propose to the said Robert so to do, and was then and there and at all times ready and willing to do, execute and perform all things whatever, which by his undertaking aforesaid he had agreed to do, and did then and there require of the said Robert the performance and fulfilment of the said undertaking, by him on his part to be performed and fulfilled, and especially to pay the said price or sum of five hundred dollars, and to accept the transfer of the said shares of *stock on the books of the said company, agreeably to  [*339] his promise and undertaking aforesaid. But the said Robert did not nor would then and there pay the said price or sum of five hundred dollars, and did not nor would then and there accept the transfer of the said shares of stock on the books of the said company, and did not nor would then and there perform and fulfil his agreement so as aforesaid made, but did wholly neglect and refuse so to do, to the damage of the said John six hundred dollars.

And whereas also afterwards, to wit, on the day and year aforesaid, at the city aforesaid, the said Robert was indebted to the said John in the further sum of six hundred dollars for divers

(Martin *v.* Stillé.)

goods, wares and merchandise by the said John before that time sold and delivered to the said Robert, and at his special instance and request; and also in the further sum of six hundred dollars for money by the said John before that time lent and advanced to, and paid, laid out, and expended for the said Robert, and at his special instance and request; and also in the further sum of six hundred dollars for other money by the said Robert before that had and received to and for the use of the said John; and being so indebted he the said Robert, in consideration thereof afterwards, to wit, on the day and year aforesaid, at the city aforesaid, undertook, and then and there faithfully promised the said John to pay him the said several sums of money when he the said Robert should be thereto afterwards requested.

And whereas also afterwards, to wit, on the day and year aforesaid, at the city aforesaid, the said Robert accounted with the said John of and concerning divers other sums of money from the said Robert to the said John before that time due and owing, and then in arrear and unpaid, and upon such accounting the said Robert was then and there found to be in arrear and indebted to the said John in the further sum of six hundred dollars, and being so found in arrear and indebted, he the said Robert, in consideration thereof, afterwards, to wit, on the day and year aforesaid, at the city aforesaid, undertook, and then and there faithfully promised the said John to pay him the said sum of money when he the said Robert should be thereto afterwards requested. Yet the said Robert, although often requested to pay the said several sums of money aforementioned, to wit, on the day and year aforesaid, at the city aforesaid, and often afterwards, the same or any part thereof to pay, hath hitherto wholly neglected and refused, and still doth neglect and refuse so to do, to the damage of the said John one thousand dollars, and therefor he brings suit, &c."

The plaintiff having, as was supposed, obtained leave of the Court for the purpose, (though the fact was disputed, and did not appear on the record,) filed the following additional counts.

" And whereas also afterwards, to wit, on the day and year aforesaid, *at the county aforesaid, in consideration that the said plaintiff, at the special instance and request of [*340] the said defendant, would, for a reasonable reward to the said defendant, in that behalf, employ the said defendant as the agent of him the said plaintiff, to sell and dispose of for him certain goods, and chattels of him, the said plaintiff, of great value, to wit, certain other one hundred and ten shares of the capital stock of the West Philadelphia Canal, of the value of five hundred dollars, to be sold and disposed of by the said defendant, for and on account of the said plaintiff, he the said defendant

(Martin v. Stillé.)

undertook, and then and there faithfully promised the said plaintiff to endeavour to sell and dispose of the same for the said plaintiff, and to conduct the said agency in a proper, skilful, and diligent manner; and although the said plaintiff, confiding in the said promise and undertaking of the said defendant, did afterwards, to wit, on the day and year aforesaid, at the county aforesaid, employ the said defendant for the purpose and in the manner aforesaid, and the said defendant did then and there accept the said employment and agency, yet the said defendant, well knowing the premises, but not regarding his duty as such agent, nor his said promise and undertaking, but contriving, and craftily and subtlely intending wrongfully and unjustly to injure the said plaintiff, did not nor would, although often requested so to do, endeavour to sell and dispose of the said stock, and conduct the said agency in a proper, skilful, and diligent manner, but on the contrary thereof he the said defendant so carelessly, negligently, and improperly behaved and conducted himself in and about the said agency, that by and through the carelessness, negligence, and improper conduct of the said defendant, in that behalf he the said plaintiff has lost and been deprived of the whole of the said stock, and also hath incurred and paid a large sum of money, to wit, the sum of one hundred dollars in and about the sale and disposal of the said stock.

And whereas also, afterwards to wit, on the day and year aforesaid, at the county aforesaid, in consideration that the said plaintiff, at the special instance and request of ·the said defendant, would, for a reasonable reward to the said defendant in that behalf employ the said defendant as the agent of him the said plaintiff to sell and dispose of for him the said plaintiff, certain goods and chattels of him the said plaintiff, of great value, to wit, certain other one hundred and ten shares of the capital stock of the West Philadelphia Canal, of the value of five hundred dollars, to be sold and disposed of by the said defendant, for and on account of the said plaintiff, he, the said defendant, undertook, and then and there faithfully promised the said plaintiff to endeavour to sell and dispose of the same .for the said plaintiff, and to conduct the said agency in a proper, skilful, and diligent manner, and although the said plaintiff, confiding in the said promise and undertaking of the said defendant, did afterwards, to wit, on the day and year aforesaid, at the county aforesaid, *employ the said defendant, for the purpose and [*341] in the manner aforesaid, and the said defendant did then and there accept the said employment and agency, yet the said defendant, .well knowing the premises, but not regarding his duty as said agent, nor his said promise and undertaking, but contriving, and craftily and subtlely intending wrongly and un-

(Martin *v.* Stillé.)

justly to injure the said plaintiff, did on the day and year aforesaid, at the county aforesaid, inform and communicate to, and then and there did assure the said plaintiff that he the said defendant had sold and disposed of the said stock to certain individuals who had purchased the same at and for the price or sum of five hundred dollars, when in truth and in fact the said defendant had in nowise sold or disposed of the same, whereby and by reason of which information, communication and assurance so made to him by the said defendant, he the said plaintiff was induced to believe, and did in fact suppose, that the said individuals had bound themselves to take and accept the said stock · at the said price of five hundred dollars, and the said plaintiff relying on the information and assurance of the said defendant so to him communicated as aforesaid, on the day and year aforesaid, at the county aforesaid, did duly offer to the said supposed purchasers to transfer to them the said stock, and to receive in payment thereof, the said sum of five hundred dollars, and was then and there ready and willing duly to transfer·the same to them, and to receive in. payment thereof the said sum of five hundred dollars, and upon their neglect and refusal to accept the said transfer of the said stock, and to pay the said plaintiff the said sum of five hundred dollars, the said plaintiff further relying on the said information and assurance of the said defendant as aforesaid communicated to him, the said plaintiff, did afterwards, to wit, on the day and year aforesaid, at the county aforesaid, after due notice to the said supposed purchasers, and to the defendant, and to all concerned, cause the said stock to be sold on account of whom it might concern, at public auction or vendue, where the same brought the price or sum of forty-eight dollars, to wit, on the day and year aforesaid, at the county aforesaid. And the said plaintiff, further relying on the said information and assurance of the said defendant, so to him communicated as aforesaid, did on the day and year aforesaid, at the county aforesaid, sue and prosecute in the District Court, for the City and County of Philadelphia, an action against the supposed purchasers of the said stock, namely, Augustin Stevenson, Benjamin E. Carpenter, Joseph L. Thomas, and Edwin T. Scott, to recover from them the amount by the said plaintiff supposed to be due by them to him under the said supposed purchase of the said stock, in which action the said plaintiff was then and there forced and obliged to suffer a judgment to be rendered in favour of the said supposed purchasers, namely, Augustin Stevenson, Benjamin E. Carpenter, Joseph L. Thomas, and Edwin T. Scott, and against him the said plaintiff, and the said *action was wholly abortive and of no avail to the said plaintiff, and he was forced and obliged to incur and [*342]

(Martin *v.* Stillé.)

pay therein a large sum of money, to wit, the sum of one hundred dollars for his costs and charges, and counsel fee, in and about the prosecution of the said action, and by means of the premises in this count mentioned, the said plaintiff hath lost and been deprived of the said stock, and hath also incurred and paid large costs and charges, to wit, the sum of two hundred dollars."

The defendant pleaded *non-assumpsit*; and on this issue the cause came on for trial before Jones, J. on the 27th of April, 1837, when the nominal plaintiff Stillé, was offered as a witness. It appeared by an instrument produced, that on the 7th day of January, 1834, and before the commencement of the action, he had assigned his claim or cause of action to William T. Smith, in consideration of one dollar. The subscribing witness to this assignment, having proved its execution, said, on the cross-examination, "I don't know that William T. Smith was present at the time I saw Mr. Stillé sign the paper. It was signed at Stillé's office. I am sure I saw him sign it. I don't remember to have seen any consideration pass."

The counsel for the defendant objected to the admission of Mr. Stillé as a witness, on the ground that he had not been released by Smith. The learned judge, however, overruled the objection, and the witness was sworn.

It appeared from the evidence that Mr. Stillé was the owner in 1832, of one hundred and ten shares of the West Philadelphia Canal Company, of which company the defendant was treasurer. The defendant kept an office as a broker, and was told by Mr. Stillé that he was willing to sell his stock at a certain price. A few days afterwards the defendant told him that he had sold the stock, and that he would call and give him the names of the persons to whom it was to be transferred. He did not call at the time appointed, but at a subsequent day, told the plaintiff that the proposed purchasers had not made up their minds. The plaintiff insisting that the bargain had been concluded, the defendant gave the names of certain persons as his principals. The plaintiff then gave them notice that he would transfer the stock and hold them responsible. Afterwards he caused the stock to be sold at auction, and brought suit against them to recover the difference between the proceeds at auction and the price bargained for. On the trial before arbitrators, Martin the present defendant, was examined as a witness for the plaintiff, but he denying that they had authorised him to purchase the stock for them, the plaintiff failed in his action. In the course of his examination, Mr. Stillé said that he made a *gift [*343] of the claim to William T. Smith, and that no consideration passed for it.

(Martin *v.* Stillé.)

The counsel for the defendant requested the judge to charge the jury on the following points, viz.——

" 1. That even if there be evidence that the defendant told Mr. Stillé that he had sold his stock to Stevenson, Scott, Carpenter, and Thomas, when in truth he had not, such evidence will not authorise the jury to find a verdict for the plaintiff under the pleadings in this action.

2. That the statement on oath of the defendant before the arbitrators in the action *Stillé* v. *Stephenson, et al.* June, 1832, No. 549, is evidence in this action to contradict the evidence of Mr. Stillé."

The judge, however, charged the jury in substance as follows.

" This is an action brought for the breach of a contract. The plaintiff alleges that he sold to the defendant one hundred and ten shares of the West Philadelphia Canal Stock for five hundred dollars—that he offered to transfer the stock in fulfilment of the contract, and the defendant refused to accept and pay for it. He also alleges that he was obliged to sell the stock at public auction and that it produced forty-eight dollars only. The action in fact is brought for refusing to accept and pay for the stock according to the alleged agreement of the defendant. The plaintiff must therefore prove, 1. The contract for the sale of the stock. 2. That he was ready and offered to deliver the stock according to the contract. 3. That the defendant refused to accept and pay for the stock according to his part of the contract. 4. Having proved these facts, he would be entitled to damages for the breach of the contract. The circumstances of this case are somewhat special. The transaction does not appear to be the ordinary contract of a sale, where the parties acting professedly on their own account, one contracts to sell and the other contracts to buy the article. Mr. Martin, it seems, was the treasurer of the West Philadelphia Canal Company. Mr. Stillé, (in whose name the action is brought, for the use of Mr. William T. Smith,) was in the habit of calling at the office of Mr. Martin, to inquire about the stock of this company. On one occasion he said to the defendant that he would take five hundred dollars for his stock. A few days after, the defendant called on him and told him he had sold it, and appointed a time for the transfer. The time for the transfer was afterwards postponed, on the defendant's request, from Monday until Thursday of the same week. On Thursday, the defendant told Mr. Stillé that the purchasers refused to take it, and he then gave up their names. *The plaintiff further alleges, that Mr. Martin acted in this matter without authority from the persons whose names he had given as purchasers, and this fact, he says, appears by Mr. Martin's own declaration. The defendant, on the other hand, contends that he was the

[*344]

(Martin *v.* Stillé.)

agent of Mr. Stillé to sell this stock—that it was not his fault that the purchasers did not accept it—that at all events the plaintiff cannot maintain this action, but he should have brought an action for deceit.    The first thing to be determined is, what was the contract between Mr. Stillé and Mr. Martin, in point of fact. This is for you to determine.    The second consideration is, what is the legal effect of the contract.    As the parties differ as to the facts, I am obliged to state to you what the law is upon either view of the case.    In the first place, then, if Mr. Stillé agreed with Mr. Martin to act for him as broker and sell this stock for him if he could find a purchaser, the plaintiff cannot recover in this action.    The reason is, the plaintiff has alleged a sale of the stock to the defendant, whereas the contract upon this supposition was an entirely different one.    But if you should find the fact to be, that Mr. Martin acted generally, and on his own account, and closed a bargain for the stock with Mr. Stillé, he would be liable, although he might have said to Mr. Stillé that he was buying it for other persons.    An agent may make himself responsible, personally, on his contracts, and if such was the understanding of the parties he may be treated as a purchaser.    But suppose you should find from the evidence that Mr. Martin, not professing to purchase on his own account, represented himself as acting for and as having authority from third persons and as such closed the contract, when in point of fact he had no authority from those persons to purchase it.    In this view of the facts, he would be personally liable.    For in such case the owner of the stock has a right to hold to the bargain and get the benefit of it from somebody; and the agent having made the bargain without authority, is the only person to whom the vendor of the stock can look.    Such a case would be different from that of an agent acting with authority and within his authority for a known responsible person or for persons whose names he gives up at or before the time the contract is to be executed.    You will perceive the difference between the two cases and the reasonableness, not to say the necessity of making a distinction between cases where an agent makes a bargain without authority and with authority.    If, then, you believe that Mr. Martin did close a bargain for the purchase of this stock under pretence of authority from third persons whose names he afterwards gave up to Mr. Stillé, when in truth he had no authority from them, he is liable.    Nor would it make any difference if Mr. Martin supposed he had authority from Messrs. Carpenter, Stevenson, Scott and Thomas.    He was bound to see to it that he was authorised, and if he closed a bargain with Mr. Stillé under a mistake of his own powers, Mr.

(Martin *v.* Stillé.)

[*345] *Stillé may nevertheless insist upon the bargain. Nor would Mr. Stillé's claim be prejudiced by the proceeding against Messrs. Stevenson, Carpenter, Scott, and Thomas. A man who contracts with an agent may sometimes have an action against the agent and the principal. In such a case as this is alleged to be by the plaintiff, it might be impossible to know whether the agent had authority or not before suit brought and trial against the supposed principal. The law, however, did not require it of Mr. Stillé to give notice to Mr. Martin that he held him responsible, when he commenced proceedings against Messrs. Stevenson and others. These are all the questions of law which have been discussed. With these principles in view you will settle the case. The questions of fact are those which I have stated. Two questions have been proposed, upon which an opinion is requested. (Here the judge read them.) The first of these questions I have sufficiently answered. As to the second question, the evidence before us is that Mr. Martin did testify before the arbitrators to certain facts; and that he did so testify is a fact in this cause. It was admitted without objection. But Mr. Martin cannot be considered a witness in this cause, nor can what he there said be treated as testimony in this cause, but only the fact that Mr. Martin did on oath or affirmation before the arbitrators make a statement of certain matters in the manner stated by Mr. Stillé and Dr. Thomas. What Mr. Martin said on that occasion is to be considered in respect to this cause merely as a declaration made upon the occasion referred to by the witnesses, Mr. Stillé and Dr. Thomas."

The jury found for the plaintiff; and the defendant having taken a bill of exceptions, sued out a writ of error, and on the return of the record filed the following specifications.

"1. That the judge erred in admitting the evidence of John Stillé, Jun.

2. The judge erred in instructing the jury, that if they 'should find from the evidence that Mr. Martin, not professing to purchase on his own account, represented himself as acting for, and having authority from third persons, and as such closed the contract when in point of fact he had no authority from those persons to purchase; in this view of the facts he would be personally liable.'

3. That the judge erred in instructing the jury that Mr. Stillé's claim would not be prejudiced by proceeding against Messrs. Stevenson, Carpenter, Scott, and Thomas.

4. The judge erred in instructing the jury that the law did not require it of Mr. Stillé to give notice to Mr. Martin that he [*346] held *him responsible when he commenced proceedings against Messrs. Stevenson and others.

(Martin *v.* Stillé.)

5. The judge erred in not instructing the jury in conformity with the request of the counsel of the defendant, contained in the first point submitted by him.

6. The judge erred in not instructing the jury in conformity with the request of the defendant's counsel contained in the second point submitted by him.

7. Because the evidence given on the trial did not support the declaration.

8. Because the judge instructed the jury that they might find a verdict for the plaintiff under the pleadings in the cause, upon the evidence given on the trial.

9. That a general verdict and judgment have been rendered on a declaration containing various counts inconsistent with each other."

Mr *Brewster* and Mr. *Rawle* for the plaintiff in error, argued, 1st. That Mr. Stillé ought not to have been admitted as a witness.    2d. That there was a misjoinder of counts.    Upon which points were cited, 1 Chitty's Pleading, 139, 499; 2 Johnson's Reports, 326; 1 Bacon's Abridgment, 79; 4 Johnson's Reports, 480; *Wilson* v. *Marsh*, (1 Johnson's Reports, 503); *Bemis* v. *Howard*, (3 Watts, 255); *Crawford* v. *Morell*, (8 Johns. Rep. 195).

Mr. *A. H. Smith*, and Mr. *C. Ingersoll*, *contra*, cited *Wistar* v. *Walker*, (2 Browne's Rep. 171); 3 Johns. Rep. 70; 2 Pickering, 221; 11 Massachusetts Reports, 209; 1 Saunders on Pleading, 71.

The opinion of the Court was delivered by

SERGEANT, J.—The plaintiff in error relies for the reversal of this judgment, mainly on the misjoinder of the counts; insisting that it appears by the record that the two additional counts were regularly filed in the Court below.    Supposing this to be the case, the question arises whether there is a misjoinder of different actions.    The rule is now settled, that different counts may be joined in one action, either when the same plea may be pleaded and the same judgment given, on all the counts of the declaration, or when the counts are of the same nature, and the same judgment is to be given on them all.    1 Chitty's Plead.. 197.    In actions in form *ex contractu*, the plaintiff may join as many different counts as he *has cause of action in as-   [*347] sumpsit; so also in covenant, debt, account, annuity, or *scire facias*.    *Ib.*    In the present case, all the counts allege a promise and undertaking by the defendant; the plea to all was the same, and the judgment was the same.    If the additional

counts added to their allegation of a promise and undertaking by the defendant, matters founded on negligence and tort, and advantage could be taken thereof by the defendant, it could only be by special demurrer for informality, as was held in *White* v. *Risden*, (Cro. Car. 20.) After verdict it is sufficient that they concur with the original declaration in stating a contract. There is, therefore in this case no misjoinder.

There is nothing in the other error relied on, of the admission of Mr. Stillé as a witness.

Judgment affirmed.

Cited by Counsel, 5 Wharton, 447; 5 Watts & Sergeant, 509; 7 Id. 145. Overruled as to the competency of the witness, 6 Barr, 326; see also, 4 Watts, 254; 5 Watts & Sergeant, 510; 6 Id. 556; 7 Id. 145; 8 Id. 57, 274; 1 Barr, 173, 365; 2 Id. 46, 427; 3 Id. 376; 7 Id. 326; 10 Id. 430; 1 Harris, 110; 5 Id. 103; 7 Id. 177, 193; 9 Id. 298, 476; 11 Id. 28; 2 Casey, 512; 11 Id. 457; 5 P. F. Smith, 331. The law on this subject has however been changed by act of 15th April, 1869. § 1, P. L. 30, Pur. Dig. Sup. 1566, §1.